## Cable v. McCoun.

### March 17, 1939.

J. Brack Howard, Judge.

A. F. BYRD for appellant.

WILLIAMS & ALLEN, C. E. LINDON and LEEBERN ALLEN for appellee.

OPINION OF THE COURT BY JUDGE STITES—Affirming.

The appellant, Lizzie Cable, in April, 1922, sold a quantity of standing timber to the appellee, Glen Mc-Coun, for which he paid a certain amount in cash and executed three promissory notes in the sum of $1,000 each. It appears from the allegations of appellant's petition that the notes were to mature seriatim on May 15th of 1923, 1924, and 1925 and to bear interest at the rate of three per cent until maturity and at six per cent thereafter until paid. Elsewhere in the record it appears that the notes were to bear three per cent until paid. The variance is unexplained and the notes are not before us. It is alleged in the answer, however, and not denied that the notes were to bear interest at three per cent until paid. We assume, therefore, that this is correct. In July, 1922, appellee transferred his rights in the timber to the H. M. Page Log and Lumber Company, H. M. Page and L. M. Moore. As a part of the consideration for that contract the purchasers agreed to "assume and pay off and discharge" the three notes to Lizzie Cable. The first of the three notes was duly paid. The last two are involved in the present controversy. As will presently appear, only one of them is here open to question.

On August 26, 1933, appellant filed suit on the two notes, aggregating $2,000 against the appellee. On December 23, 1933, the appellee filed an answer traversing certain allegations of the petition and, by a second paragraph, pleaded that appellant had released him from liability on the notes and had agreed to accept the subsequent purchasers of the timber as obligors on the notes. He asserted that the plaintiff had thereafter extended time to the purchasers for the payment of the

notes and released him from further liability. By an amended answer he pleaded that the plaintiff had secured a judgment against the purchasers for the $2,000 claimed to be due.

On the same day that his original answer was filed (December 23, 1933) appellee filed a separate action against appellant on four notes aggregating $1,455 (subject to various credits) and on an account in the sum of $100. On motion of appellant the two actions were consolidated and when they were tried, appellant, herself, offered an instruction directing the jury to find a verdict against her on the four notes as credited by various payments. The jury found a verdict as thus instructed at her instance. On the issue submitted concerning the account sued on the jury found in appellant's favor. So far as this action is concerned, therefore, there can be no possible ground of complaint and we may dismiss it from further consideration.

On the issue submitted concerning the liability of appellee on the two $1,000 notes the evidence was conflicting and about equiponderant. No useful purpose can be subserved by reciting it here. The jury found in favor of appellant on the note due May 15, 1925, and against her on the other note. There was evidence to the effect that the latter-mentioned note had been surrendered to the lumber company in exchange for their note bearing a higher rate of interest. We are left, at last, with the question of the propriety of denying appellant recovery upon this one note.

Appellant has raised a number of questions relating to matters contained in the claims of the appellee against her. As pointed out above, all questions regarding these claims were submitted to the jury under instructions which she herself offered, and, as to every issue on which the jury was permitted to make a finding, it found a verdict in her favor. We see no prejudicial error in any of these matters, but if any existed it was invited by appellant herself on the basis of her own instructions and would therefore not furnish a ground for reversal.

Appellant insists that the trial court should have sustained a demurrer to the answer as amended. We gather from her brief that she considers the alleged arrangement between herself and appellee and the Page Log and Lumber Company to have amounted to the

mere acceptance on her part of the lumber company as surety on appellee's notes. Obviously, this is a misconception and the facts pleaded, aside from the mere conclusions, show that there was a novation by which appellant accepted the lumber company as her obligor in consideration of the release of appellee. This was a defense to appellant's claims and the court did not err therefore in overruling the demurrer. So far as the evidence introduced at the trial is concerned, it amply supported the finding of the jury to the effect that there was a novation as to one of the $1,000 notes, but not as to the other.

Appellant argues that certain evidence was improperly permitted to be introduced, but an examination of these items shows that they were both competent and relevant. The objection is apparently the result of appellant's misconception of the effect of appellee's claim under the answer mentioned above.

She also insists that the court erred in refusing to transfer the case to the equity docket. We pointed out above that the only serious issue in the case was whether or not there had been a novation of the two $1,000 notes. The accounts between appellant and appellee were not complicated and we see no reason for transferring the case to equity even had appellant's motion been seasonably made—which it was not.

Finally, appellant complains that counsel for appellee went outside of the record and the evidence in his argument to the jury. A perusal of these alleged statements shows that most of them were amply justified by the evidence and any that were not could not possibly have constituted prejudicial error. One example will suffice to indicate the insignificance of this objection. The others are on a par with it. Counsel stated to the jury that appellant was a sister to Bob Miller and to Ike Miller when the record showed only that she was a sister to Ike. There is nothing from which we could infer that relationship to Bob would in any way render appellant odious to the jury or that they did not already know this fact if it did, and it is difficult to see how counsel can seriously rely on such errors as a basis for reversal.

Appellant argues her case as though this appeal was a trial de novo. This court reviews the records brought to it in common law actions for errors of law

occurring in the court below. We are, of course, in no position to measure the truth or falsity of the testimony adduced. That is the province of a jury and, unless there are inherent inconsistencies or absurdities in the testimony, there is no way in which we can weigh it other than at its face value. We can determine if a verdict is flagrantly against the evidence but we can not usurp the functions of a jury beyond that point. A reading of the evidence in the case before us indicates very plainly, we think, that the verdict of the jury was in exact accord with the preponderance of the testimony. It certainly was not flagrantly against the evidence nor induced by any visible passion or prejudice.

Judgment affirmed.